CREAM-O-LAND DAIRY, A CORPORATION OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. MILK DRIVERS AND DAIRY EMPLOYEES LOCAL 680, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued September 28, 1970—Decided October 22, 1970.

Before Judges CONFORD, KOLOVSKY and CARTON.

*Mr. Thomas L. Parsonnet* argued the cause for appellant (*Messrs. Parsonnet, Parsonnet & Duggan,* attorneys).

*Mr. Ernest Gross* argued the cause for respondent (*Mr. Harold J. Sklarew,* attorney).

The opinion of the court was delivered by

CARTON, J. A. D. Defendant Milk Drivers and Dairy Employees Local 680 appeals from a judgment granting plaintiff Cream-O-Land Dairy an injunction restraining the union from picketing plaintiff's customers. Defendant claims that the state court lacks jurisdiction over the matter since it involves a controversy subject to section 7 or 8 of the Na-

tional Labor Relations Act (29 *U. S. C. A.* §§ 157, 158) and is therefore preempted to the jurisdiction of the National Labor Relations Board. We agree.

Dairy had an exclusive contract since 1953 with the Dairy Workers Association, Inc., a labor union, which, with the exception of certain specified classes, represented its employees. The latest contract, dated May 1, 1969, ran for a term of two years and according to Dairy contained wage and fringe benefits equal to or exceeding those in contracts of other dairies or negotiated by Local 680.

On July 8, 1970 representatives of Local 680 were observed picketing a Hills Supermarket, a company with which Dairy did a gross annual business of $600,000. The pickets were carrying signs and passing out handbills to people walking in the store. The picket signs read:

CREAM-O-LAND DAIRY
pays wages and fringe
benefits below the scale
required by union contracts

---

DON'T BUY
CREAM-O-LAND
DAIRY PRODUCTS

---

MILK DRIVERS AND DAIRY
EMPLOYEES LOCAL 680

On July 15 the Chancery Division, on the basis of affidavits, granted a temporary restraining order returnable July 20, 1970. The affidavit of Backhaus, one of Dairy's employees, contained an assertion that one of the pickets, in response to his inquiry as to why he was picketing, stated that Cream-O-Land's drivers reportedly worked six days a week, 14 to 16 hours a day, and were paid $180 per week with no fringe benefits. Backhaus averred that these allegations were false. He also asserted that the picket told him that Local 680 had been trying to organize Cream-O-Land for five years.

On the July 20 return date the court heard testimony similar to that contained in the supporting affidavits. Testimony was offered to the effect that while the picketing was going on, sales of Cream-O-Land products in the store substantially declined but that these sales returned to normal once the picketing was restrained.

Local 680 filed no answering affidavits and offered no witnesses but moved to dismiss on grounds of federal preemption among others. The court made the finding that the picketing with the legend on the placard was "essentially to coerce Plaintiff's employees, or to act as a coercion upon the Plaintiff and its employees to ultimately enter into and negotiate a contract with the Defendant union." The court also found that although the picketing was peaceful, it was for an improper or illegal purpose and if permitted to continue would constitute "an irreparable harm to the plaintiff, to Hills Supermarket, as well as to other customers."

An order was entered enjoining Local 680 from picketing "until the further order of this court." The court relied upon *Ind. Dairy Workers, &c. v Milk Drivers, &c., Local No. 680,* 30 *N. J.* 173 (1959). Despite the apparently interlocutory language of the order, the court later certified to this court its intention that this order constitute a final judgment.

After the institution of these proceedings defendant applied to the National Labor Relations Board for a ruling as to whether or not that board would assert jurisdiction over the issues in this case. On August 26, 1970 the Board issued an advisory opinion to the effect that it had statutory jurisdiction and would assert it in this case.

If it is arguable that the activity in dispute is permitted by section 7 or prohibited by section 8 of the National Labor Relations Act, the courts have no jurisdiction, the National Labor Relations Board having exclusive and preemptive jurisdiction. *San Diego Bldg. Trades Council v. Garmon,* 359 *U. S.* 236, 79 *S. Ct.* 773, 3 *L. Ed. 2d* 775 (1959). See also *International Longshoremen's Assn. v. Ariadne Shipping Co.,* 397 *U. S.* 195, 90 *S. Ct.* 872, 25 *L. Ed.* 2d

218 (1970)'. There are certain exceptions to the rule of preemption which are referred to later in this opinion, but this case is not within any of them.

Section 7 of the act grants labor's right to organize, to bargain collectively and to take concerted action in support thereof. Section 8 specifies and prohibits unfair labor practices. Section 8(b) specifies unfair labor practices by unions, including secondary-boycott picketing to force recognition or to organize. Section 8(b) (4) permits peaceful publication of union grievances.

Dairy argued, and the court found, that defendant through picketing sought to force employees into defendant's union and to pressure the employer to recognize and bargain with it. In effect, Dairy charges the Local with violation of section 8(b) (4) (C) or 8(b) (7)—charges cognizable by the National Labor Relations Board. Defendant Local's contention that it had the right of peaceful publication of its grievances through picketing and the Dairy's charge that these alleged grievances are unfounded in fact also involve a dispute cognizable by the National Labor Relations Board under section 8(b) (7) (C).

Whether, as defendant Local contends, it engaged in this picketing for the sole objective of truthfully advising the public that the employer was perpetuating substandard working conditions, whether the alleged substandard conditions in fact existed, or whether the picketing was, as found by the court, for the purpose of coercing plaintiff and its employees ultimately to enter into and negotiate a contract with Local 680, the matter, at least arguably, involved a labor dispute within the remedial jurisdiction of the National Labor Relations Board.

*Garmon, supra,* recognized exceptions to the preemption doctrine. Where "the regulated conduct touched interests so deeply routed in local feeling and responsibility" preemption would not be inferred nor would preemption be imposed where the activity regulated was a merely peripheral concern of the Labor Management Relations Act. 359 *U. S.* at 243–244,

79 S. Ct. at 779, 3 L. Ed. 2d at 782. *Linn v. United Plant Guard Workers,* 383 *U. S.* 53, 86 *S. Ct.* 657, 15 *L. Ed.* 2d 582 *(1966),* does not change that rule. *Linn* held that protection against certain defamatory attacks was available in state courts although arising out of a labor dispute.

Nothing shown by the record brings this case within any of the recognized exceptions. Plaintiff makes no allegation of physical violence or threat thereof. It refers to no local responsibility. It alleges no tortious conduct cognizable in the state courts within the Supreme Court's interpretation. The peaceful picketing it seeks to enjoin cannot be considered of peripheral concern to the concept of federal regulation. Moreover, since the trial court found that the union's picketing was of a peaceful character, the activity must be considered as arguably protected under section 7. Respondent's reliance on *Ind. Dairy Workers, &c. v. Milk Drivers, &c., Local No. 680, supra,* does not aid its cause since the court there expressly noted that none of the parties before it had raised the issue of federal preemption, and it is obvious that the court was expressing no view on that issue. 30 *N. J.* at 177.

The judgment awarding the injunction must therefore be reversed.

Local 680 argues that the union is entitled, upon reversal of the injunction on preemption grounds, to allowance of costs and counsel fees. That claim is grounded on the Anti-Injunction Act, *N. J. S. A.* 2A:15–53, which mandates that no temporary restraining order or interlocutory injunction shall be allowed in a labor dispute case brought pursuant to the statute except upon condition that plaintiff file with the court a bond or undertaking in favor of the persons enjoined, in an amount sufficient to secure them their court costs and counsel fees in the event the injunctive relief sought is subsequently denied by the court or the order granting same is later reversed by an appellate court. It is contended that the injunction was reversible not only on grounds of federal preemption but also for violation of pro-

cedural requirements of the Anti-Injunction Act in several particulars.

■ Since we do not here reach the merits of the underlying labor controversy, we are not compelled to award costs or counsel fees. See *U. S. Pipe & Foundry Co. v. United Steel Workers of America,* 37 *N. J.* 343, 360–64 (1962). In the circumstances of this case, we conclude that costs and counsel fees should not be awarded.